**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**KEVIN L. MOYER**
Moyer & Irk, P.C.
Lebanon, Indiana

ATTORNEYS FOR APPELLEE:

**DANIEL D. TRACHTMAN**
**BRIAN D. BURBRINK**
Wooden & McLaughlin, LLP
Indianapolis, Indiana

FILED
Sep 24 2012, 9:29 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

STEVEN R. BRANDENBURG,              )
                                    )
        Appellant-Plaintiff,        )
                                    )
        vs.                         )        No. 29A02-1201-PL-70
                                    )
FIRST REPUBLIC MORTGAGE             )
CORPORATION,                        )
                                    )
        Appellee-Defendant.         )
                                    )

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Daniel J. Pfleging, Judge
Cause No. 29D02-1010-PL-1301

**September 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Steven R. Brandenburg appeals the trial court's grant of summary judgment in favor of First Republic Mortgage Corporation on his unjust-enrichment claim. Finding no authority for the sole argument that Brandenburg makes in his Appellant's Brief and that Brandenburg has waived his other arguments by not making them until his Reply Brief, we affirm the trial court's grant of summary judgment in favor of First Republic.

**Facts and Procedural History**

Brandenburg has been employed in the mortgage industry for many years. From approximately 1988 to 1999, Brandenburg worked at GMAC Mortgage Company in Indianapolis. Brandenburg's employment at GMAC overlapped with that of Robert Waddey. After Brandenburg left GMAC in 1999, he did not speak to Waddey again until the events in this case.

First Republic is an Indianapolis-based mortgage company. Michael Osterling is President and David Richey is Vice-President. Brandenburg met First Republic's Osterling on a golf course during the spring or summer of 2008. Brandenburg had no relationship with First Republic but had heard of the company given that people in the mortgage industry have a general familiarity with other mortgage companies.

In August 2008, Brandenburg learned from an insider that his former employer, GMAC, intended to close its Indiana retail brokerage business. Brandenburg was self-employed at the time and had been considering making a change; therefore, he viewed this information as an "opportunity" for himself and First Republic. Appellee's App. p. 28.

Accordingly, on August 29, Brandenburg contacted Osterling and informed him that an Indiana mortgage company might be closing its local offices. Brandenburg suggested that it could be a great opportunity for First Republic to bring on several employees at one time. Osterling was interested in learning more, and a meeting was scheduled for September 2.

In the meantime, Brandenburg contacted Waddey, who was still employed as GMAC's district manager. This was the first contact between Brandenburg and Waddey in several years. They discussed the impending termination of GMAC's Indiana mortgage business and Brandenburg's meeting with First Republic. Waddey gave Brandenburg permission to let Osterling and Richey know that Waddey was interested in talking to First Republic.

Brandenburg met with Osterling and Richey at First Republic's offices on the morning of September 2. During this meeting, Brandenburg disclosed his knowledge that GMAC was closing. Brandenburg suggested that he would come on as a loan officer and in return for helping First Republic recruit GMAC's staff, he would receive compensation for their production. Brandenburg proposed a compensation scheme while Osterling and Richey listened. Osterling and Richey told Brandenburg that a written employment proposal from First Republic would be forthcoming.

Brandenburg left the September 2 meeting with the impression that he and First Republic had arrived at a two-part agreement: (1) Brandenburg would receive 65% commission for any loans that he originated and (2) he would receive 10% of the service-retained premiums generated by the former GMAC employees. *Id.* at 30. Brandenburg

3

concedes, however, that he had no idea what First Republic's understanding may have been. *Id.*

Brandenburg returned to First Republic on the afternoon of September 2 accompanied by Waddey, and the two of them met with Osterling and Richey. The group discussed that Bob Wampler, another GMAC employee, would be a critical person in terms of his ability to influence the other loan officers to join First Republic. Waddey was not offered a job during the September 2 meeting; instead, he and First Republic scheduled a second meeting to enable Waddey to further explore First Republic's culture and philosophy. The second meeting involved only Waddey, Osterling, and Richey.

Waddey set up another meeting for the former GMAC employees to listen to a presentation by First Republic. First Republic ultimately hired Waddey, Wampler, and twelve other GMAC employees. However, Waddey was the only former GMAC employee Brandenburg introduced to First Republic. Although Brandenburg no doubt facilitated the initial introduction on September 2, Waddey undertook an independent evaluation of whether to pursue employment with First Republic, including weighing a competing job offer. In fact, Waddey informed Brandenburg that he had no intention of working as a subordinate to Brandenburg at First Republic. Brandenburg acknowledges that he did not negotiate with First Republic on behalf of Waddey and left it up to Waddey to negotiate his own deal with First Republic.

On October 20, 2008, First Republic sent Brandenburg a written offer of employment. *Id.* at 52. The offer letter proposed the following compensation arrangement: (1) it offered Brandenburg a position as a loan officer; (2) it offered to pay

4

him in accordance with First Republic's standard loan officer's compensation's schedule, which was described in the attached employee handbook; and (3) it offered to pay him additional compensation for "initiating our introductions to the former GMAC Central Indiana origination group," which amounted to two basis points on the monthly closed loan volume for a maximum of twenty-four months on twelve originators which were then listed by name. *Id.* To be eligible for the additional compensation, Brandenburg had to be employed for the same twenty-four months and produce "at an annualized rate of at least 4 million dollars per year in closed loan volume," which was First Republic's standard for a full-time loan officer. *Id.* According to the employment offer, the additional compensation commenced "as of the date" of Brandenburg's employment. *Id.* The offer was valid through November 15. *Id.*

Upon receipt of the offer, Brandenburg called Osterling and said that the offer was different than what he had proposed during their September 2 meeting. According to Brandenburg, the employment package differed in the following respects: (1) it imposed a minimum annual production requirement; (2) it changed the override on the former GMAC employees from 10% to 2%[1]; and (3) the standard loan officer compensation schedule, as outlined in the employee handbook, did not provide that Brandenburg would be paid a 65% commission on whatever service-retained premiums he generated.

At some point, Brandenburg told Osterling and Richey that he did not think the employment offer represented their agreement and that he would not agree to its terms.

---

[1] The written employment offer says 2 points, not 2%. *See* Appellee's App. p. 52.

First Republic did not receive a response to its written offer of employment, and Brandenburg has never worked for First Republic.

On October 1, 2010, Brandenburg filed a complaint against First Republic alleging breach of contract and unjust enrichment; however, Brandenburg later withdrew his claim for breach of contract.[2] First Republic filed a motion for summary judgment. Following a hearing, the trial court granted summary judgment in favor of First Republic. *Id.* at 59. Brandenburg now appeals.

## Discussion and Decision

Brandenburg contends that the trial court erred in granting summary judgment in favor of First Republic on his unjust-enrichment claim. In reviewing an appeal of a motion for summary judgment ruling, we apply the same standard applicable to the trial court. *Presbytery of Ohio Valley, Inc. v. OPC, Inc.*, 2012 WL 3570379, *5, --- N.E.2d ---, --- (Ind. 2012). Summary judgment is appropriate where the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). Review is limited to those facts designated to the trial court, T.R. 56(H), and "[a]ll facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party." *Presbytery of Ohio Valley*, 2012 WL at 3570379 *5 (quotation omitted).

A claim for unjust enrichment is a legal fiction invented by the common-law courts in order to permit a recovery where the circumstances are such that under the law

---

[2] It was not until the summary-judgment stage that Brandenburg made this concession. That is, Brandenburg conceded that summary judgment should be entered in favor of First Republic on his claim for breach of contract because the statute of frauds required any agreement to be in writing as their alleged agreement spanned thirty-six months. Appellant's App. p. 17; Appellee's App. p. 100-01.

6

of natural and immutable justice there should be a recovery. *Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009), *reh'g denied*. "'A person who has been unjustly enriched at the expense of another is required to make restitution to the other.'" *Id.* (quoting Restatement of Restitution § 1 (1937)). To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust. *Zoeller*, 904 N.E.2d at 220; *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991), *reh'g denied*. Indiana courts articulate three elements for this claim: (1) a benefit conferred upon another at the express or implied consent of the other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment. *Woodruff v. Ind. Family & Social Servs. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012), *cert. filed*, 81 U.S.L.W. 3003 (U.S. June 18, 2012) (No. 11-1523).

Brandenburg's sole argument in his Appellant's Brief is that in order to survive summary judgment on his unjust-enrichment claim, all he must do is identify a wrong action on the part of First Republic. Appellant's Br. p. 9. As support for this argument, Brandenburg partly quotes a sentence from *American United Life Insurance Co. v. Douglas*, 808 N.E.2d 690, 697 (Ind. Ct. App. 2004) (the full sentence is: "Whether the actions of AUL rise to the level necessary to establish unjust enrichment is a determination to be made beyond the summary judgment stage of the litigation."), *trans. denied*. Brandenburg, however, quotes this sentence from *Douglas* as if it is this Court's holding. But this sentence is not this Court's holding; rather, this sentence is from the

7

trial court's summary-judgment order. Despite the fact that First Republic pointed out this error to Brandenburg in the trial court below and again on appeal, Brandenburg continues to erroneously rely on this statement as if it were authority. In fact, this Court did not even address the merits of unjust enrichment in *Douglas*. *See id.* at 705. Accordingly, *Douglas* simply does not support Brandenburg's position that in order to defeat summary judgment on an unjust-enrichment claim, all a plaintiff must do is identify a wrongful action on the part of the defendant.[3]

And notably, it is not until Brandenburg's reply brief that he even addresses the elements of unjust enrichment. A reply brief, however, is simply too late to address the merits of a claim for the first time. *See* Ind. Appellate Rule 46(C) ("No new issues shall be raised in the reply brief."). We therefore affirm the trial court's entry of summary judgment in favor of First Republic.

Affirmed.

MATHIAS, J., and BARNES, J., concur.

---

[3] Brandenburg also cites a Connecticut case, *Crowell v. Danforth*, 609 A.2d 654 (Conn. 1992), which we note is not binding on us. *See* Appellant's Br. p. 9.